UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIFFERENT DRUMMER, LLC,

        Plaintiff,

v.

NATIONAL URBAN LEAGUE, INC.,

        Defendant.

---

Civil Action No. 11 CIV 4982

**VERIFIED COMPLAINT FOR BREACH OF CONTRACT**

JUDGE PAULEY

RECEIVED JUL 20 2011 U.S.D.C. S.D.N.Y. CASHIERS

## INTRODUCTION

1. This is an action for breach of contract arising out of the failure and refusal of Defendant National Urban League, Inc. ("Defendant" or "NUL") to pay any amount of the $245,000 it agreed to pay to the Plaintiff, Different Drummer, LLC (""Plaintiff" or "Different Drummer"), to provide NUL with proprietary technology and hundreds of man-hours of professional services from June to December 2010.

2. NUL, founded in 1910, is a nonprofit corporation which reported almost $45 million in gross receipts in 2009. Different Drummer is a seven member consulting team whose current and former clients include ABC Television, Mission of Hope Haiti, the National Fatherhood Initiative and Walt Disney Pictures.

3. As set forth in more detail below, in June 2010, NUL offered Different Drummer a contract to provide seven months' worth of technology and related services in support of NUL's nationwide centennial "I Am Empowered" campaign (the "Campaign"). In exchange, NUL offered to pay Different Drummer a total of $245,000

1

in monthly installments between June 1 and December 1, 2010. Different Drummer accepted NUL's offer that same month.

4. Different Drummer performed in all material respects under the contract. Among other things, Different Drummer maintained and continuously improved the online technology platform for the Campaign, offered strategic consulting and related advice to NUL, and provided support and execution in connection with all social media related aspects of the Campaign. Different Drummer also provided support and execution for over twenty separate mini-campaigns, programs and initiatives, including participating in person at events in New Orleans, Washington DC, Miami and New York.

5. Largely as a result of Different Drummer's efforts, the Campaign's online membership, influence and visibility grew substantially.

6. NUL executives praised Different Drummer's technology, staff and services, and its CEO repeatedly promised that NUL would pay Different Drummer.

7. Different Drummer's repeated demands for payment have been denied.

8. Accordingly, despite its respect for NUL and its support of NUL's vision and principles, Different Drummer has no choice but to bring this action.

## PARTIES

9. Different Drummer is, and was at all times hereafter mentioned, a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business at 1617 Cosmo Street, Suite 406, Los Angeles, CA 90028.

10. NUL is, and was at all times hereafter mentioned, a nonprofit corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 120 Wall Street, New York, NY 10005.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), as Defendant is incorporated in the State of New York and has its principal place of business in this District and a substantial part of the events and omissions giving rise to the claims in this action occurred in this District.

## FACTS

**A.  The Contract Between NUL and Different Drummer**

13. As a subcontractor under a March 15, 2010 agreement with a third party, Different Drummer provided various services to NUL in connection with NUL's "I Am Empowered" campaign, a nationwide initiative designed to celebrate NUL's 2010 centennial by calling Americans to action in the areas of education, employment, housing and healthcare (the "Campaign"). Different Drummer's services included integrating the website for the Campaign into Wildfire, an internet-based social mobilization platform licensed and maintained by Different Drummer (the "Wildfire Platform").

14. In May 2010, Marc Morial, NUL's President and Chief Executive Officer ("Morial"), and Patrick Gusman, at that time NUL's Senior Vice President, Innovation and Chief Counsel to the President ("Gusman"), began discussions with Marshall

Mitchell, founder and principal of Different Drummer ("Mitchell"), and Shelton Mercer, a Senior Executive of Different Drummer ("Mercer"), about transitioning to a direct contract solely between Different Drummer and NUL for Campaign related services. Mitchell and Mercer both considered Morial a personal friend as well as a client; Mitchell has known Morial since the mid-1990s, and Mercer has known Morial since 2010. Morial, Gusman, Mitchell and Mercer discussed how Different Drummer could bolster the Campaign by using social media strategies and tools to attract and engage participants. Morial, Gusman, Mitchell and Mercer agreed that Wildfire should continue to serve as a core component of this effort. They further agreed that Different Drummer should provide related consulting services and strategic advice.

15.  On June 15, 2010, Gusman sent Mitchell an email message with the subject line "Proposed New Relationship with the National Urban League". That message, a copy of which is attached hereto as **Exhibit A**, set forth NUL's offer to enter into a "Direct Consulting Contract with Different Drummer (from June 1, 2010 to December 31, 2010)" (the "Contract") and thereunder to pay Different Drummer a total of $245,000 in fees for maintaining the Wildfire Platform (the "Wildfire Services") and for consulting to NUL on social media opportunities, including Facebook and Twitter, contest management, and other services aimed at bolstering the Campaign (the "Consulting Services"). The message specified that NUL would pay Different Drummer $25,000 monthly for the Wildfire Services and $10,000 monthly for the Consulting Services.

16.  On or about June 20, 2010, Mitchell called Morial to discuss NUL's offer to enter into the Contract. Mitchell asked if Morial was aware of the offer and agreed

4

with its terms. Morial confirmed that he was aware of NUL's offer and agreed with its terms, and emphasized how critical Different Drummer's services would be to NUL in the months ahead. Among other things, Morial asked Mitchell to travel to New Orleans, Louisiana to personally participate in a NUL event over the upcoming July 4 weekend. Mitchell told Morial that Different Drummer was willing to accept NUL's offer and perform under the Contract for the sake of their friendship, because Different Drummer respected NUL and valued its mission, and because Mitchell knew Morial viewed the Campaign as his project and part of his legacy.

17. On or about June 20, 2010, Mitchell called Gusman on behalf of Different Drummer to accept NUL's offer and enter into the Contract.

18. On June 30, 2010, Mitchell and Mercer attended a meeting at NUL's offices in Washington, DC at Gusman's invitation. At that meeting, Gusman, who would shortly leave NUL, introduced Mitchell and Mercer to Michael Miller ("Miller"), NUL's incoming Senior Vice President, Strategy, Innovation & Technology, as the NUL executive who would assume responsibility for the Campaign. Gusman, Miller, Mitchell and Mercer discussed the Contract, Different Drummer's technology and services and related topics. Among other things, Gusman and Miller proposed that NUL and Different Drummer enter at some point into a written agreement, which, like the Contract, would be provided by NUL. Gusman and Miller requested that, in the interim, Different Drummer work under the Contract while Miller familiarized himself with his new role and responsibilities at NUL. In good faith, Mitchell and Mercer agreed, recognizing that the Campaign would be severely disrupted without Different Drummer's continued

involvement. No draft of any proposed written agreement was ever provided by NUL to Different Drummer.

19. Miller sent an email message to Mitchell and Mercer on June 30, 2010 following the meeting to say: "Great meeting you and let's move the ball forward."

**B.   Different Drummer's Performance Under the Contract**

20. Different Drummer performed in all material respects under the Contract throughout its term.

21. With respect to the Wildfire Services, Different Drummer executed a smooth transition from its role as a subcontractor to a direct provider of services to NUL under the Contract, keeping the Wildfire platform operating with virtually no interruption and continuing to enhance Wildfire's performance throughout the engagement. Different Drummer provided NUL with all required maintenance, administration and technical support for Wildfire.

22. With respect to the Consulting Services, Different Drummer provided NUL with strategic and tactical advice, support and execution in connection with all social media related aspects of the Campaign. These included cultivating a community for the Campaign via action population, curating and growing the audience for NUL's online content, managing social media messaging (including daily Facebook and Twitter updates), dashboard discussions, email and SMS campaigns and bulletins, and generating and executing promotional contests. Due largely to Different Drummer's efforts, by the end of 2010, the Campaign's online community had grown to over 18,000 members, with the ability to message over 31,000 via email campaigns; NUL's Facebook group grew

from under 2,000 to over 6,800 members; and NUL's Twitter following grew from about 800 to over 3,000.

23. Different Drummer also provided a variety of other services to NUL, including gaining media exposure for NUL on select issues and creating unique media opportunities, including in various kinds of digital media and on satellite radio and national television feeds. Different Drummer engaged media and entertainment personalities and prominent bloggers to share NUL's messages and encourage their followers to follow NUL.

24. Different Drummer provided robust advisory support to NUL executives, staff and vendors and creative execution for over twenty separate mini-campaigns, events and initiatives, including providing live onsite support in New Orleans, Washington DC, Miami and New York. Different Drummer played a leadership role during NUL's July-August Centennial Celebration, following which the Campaign witnessed a substantial increase in social media participation, membership and engagement. During NUL's Gulf Coast Bill of Rights Campaign, Different Drummer advised on website design, layout and content; directed the web design team on implementation; and executed an email campaign directing recipients to the Gulf Coast Bill of Rights Campaign's website. On NUL's Save Our Summer Jobs Campaign, Different Drummer participated in multiple ad hoc calls and email threads to keep up with rapid developments in related advocacy and legislative processes; worked with the National Urban League Policy Institute to clarify and refine its call to action; drafted messages for an email campaign directing participants to contact their Congressional representatives and sign a petition; and posted engaging social media messages daily to garner supporters. During the Essence Music Festival,

NUL's Centennial Conference and the One Nation March in October 2010, Different Drummer's Wildfire platform and content management and curation played key roles. Different Drummer provided NUL with a wide array of services and support, including live onsite support, in connection with NUL's voter registration activities, the Whitney M. Young Leadership Conference, the One Nation Rally, Equal Opportunity Day, Blogalicious (a national conference for female bloggers attended by Morial), and many other programs.

25.     From June through December 2010, NUL and Different Drummer were in daily contact. NUL repeatedly requested, directed, ratified and relied upon Different Drummer's services with the direct oversight and involvement of Morial, Miller and other NUL executives, including Rhonda Spears Bell, Senior Vice President of Marketing and Communications; Chanelle Hardy, Senior Vice President for Policy and Executive Director, National Urban League Policy Institute; Teresa Candori, Director of Media Relations; Amber Jaynes, Vice President of Marketing and Communications; Nicolaine Lazarre, Vice President, Innovation and General Counsel; Zuhirah Khaldun, Director of Marketing and Communications; Khafra Crooks and Michael Williams, Managers, Innovation; and Kenya Johnson, Manager of Marketing and Communications. Different Drummer held standing weekly team calls with up to fifteen NUL staff, often including Morial, to review and plan strategy, tactics and progress on the Campaign.

C.     **NUL's Breach of the Contract**

26.     NUL has not made a single payment to Different Drummer under the Contract, despite repeated requests for payment by Different Drummer and repeated acknowledgments by NUL that payment was due.

27. On or about October 10, 2010, Mitchell and Mercer met with Morial in Miami, Florida. At that meeting, Morial indicated that NUL wanted Different Drummer to provide additional services after the Contract expired in December 2010. When Mitchell and Mercer pointed out that Different Drummer had yet to receive any payment from NUL under the Contract, Morial replied, "I know. We're going to pay you. We need you guys." Morial then asked for patience, claiming that NUL and the Campaign were still working through the transition from Gusman to Miller.

28. On December 2, 2010, Mercer sent Miller an email message stating that back payments were due to Different Drummer and requesting that NUL make such payments before the holidays. Miller sent Mercer an email message on the same day saying he was "surprised by [Mercer's] assumption that NUL owes Different Drummer any back payments." On or about December 22, 2010, Mitchell called Morial to discuss Miller's response. Morial told Mitchell that Miller's response must have been due to a misunderstanding and again agreed that NUL owed Different Drummer payment for services rendered. Morial also reiterated his desire to have Different Drummer provide additional services to NUL in the future. And Morial promised to meet with Mitchell to discuss the foregoing, including payment by NUL of fees owed to Different Drummer, after the December 2010 holidays.

29. On or about December 20, 2010, Mercer called Nicolaine Lazarre, NUL's Vice President, Innovation and General Counsel ("Lazarre"), to discuss various matters, including the payments acknowledged by Morial to be due to Different Drummer under the Contract. At that point, Lazarre disputed whether any such payments were due, raised issues with certain aspects of Different Drummer's performance and even called

into question the existence and/or validity of the Contract. At no previous point during the term of the Contract had anyone at NUL ever disputed the existence or validity of the Contract, nor had anyone ever communicated to Different Drummer any material dissatisfaction with Different Drummer's performance under the Contract.

30. Since Mercer's call with Lazarre on or about December 20, 2010, Mitchell has made numerous calls and sent numerous email messages to Morial in an attempt to schedule the meeting Morial had promised on their call on or about December 22, 2010. Mitchell has had no reply from Morial (although NUL personnel have continued to contact Mercer well into 2011 with requests for technical assistance).

31. By a letter from counsel dated March 11, 2011, Different Drummer demanded payment from NUL of the $245,000 in fees due under the Contract. In an email message dated March 30, 2011, NUL denied the existence of the Contract and refused to make any such payments.

## CLAIM FOR BREACH OF CONTRACT

32. The allegations set forth above in ¶¶ 1-31 are realleged and incorporated herein by reference for all purposes.

33. Different Drummer entered into a valid and enforceable Contract with NUL, pursuant to which NUL agreed to pay a total of $245,000 in fees to Different Drummer in exchange for Different Drummer's Wildfire Services and Consulting Services.

34. Different Drummer performed all of its obligations under the Contract in accordance with its terms, providing NUL with Wildfire Services and Consulting Services in connection with the Campaign from June through December 2010.

35. NUL has breached the Contract in that it has failed and refused, and continues to fail and refuse, to pay Different Drummer the said sum of $245,000, or any part thereof, although payment thereof has been duly demanded by Different Drummer.

36. Plaintiff has suffered damages as a direct and proximate result of Defendant's breach of the Contract.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief and judgment as follows:

A. A monetary judgment in the amount of $245,000;

B. Prejudgment and postjudgment interest on such amount;

C. Plaintiff's costs and expenses of this action, including reasonable attorneys' fees and other disbursements; and

D. Such other and further relief as the Court deems just and proper under the circumstances.

DATED: July 11, 2011, New York, New York.

Respectfully submitted,

*/s/ Joseph A. Ruta*
Joseph A. Ruta
RUTA SOULIOS AND STRATIS LLP
1500 Broadway – 21st Fl.
New York, NY 10036
(212) 997-4500
jruta@lawnynj.com

John B. Scanlon*
LAW OFFICE OF JOHN BENNETT SCANLON PLLC
1627 35th Street, N.W.

11

Washington, DC  20007
(202) 494-3603
john@scanlon.com

*Applying for pro hac vice admission.*

# Exhibit A

**From:** Patrick Gusman <​███████​>
**Date:** Tue, 15 Jun 2010 11:53:15 -0500
**To:** marshall mitchell <​███████████​>
**Subject:** Proposed New Relationship with the National Urban League

Please call me to discuss.

Patrick

Recommendations for Direct Consulting Contract with Different Drummer (from June 1, 2010 to December 31, 2010)

- ▯▯▯▯▯▯▯**Proposed Services:**

✓ ·Monthly maintenance fee for Wildfire platform **($25,000 to be paid to Different Drummer)**

✓ ·Monthly consulting fee for Facebook, Twitter, social media opportunities, contest management and other services aimed at bolstering "I Am Empowered" **($10,0000 to be paid to Different Drummer)**

- ▯▯▯▯▯▯▯**Proposed Payments:**

✓ ·Total Maintenance Fees to Different Drummer for Wildfire        $175,000

✓ ·Consulting fees for Different Drummer        $ 70,000

✓ ·Total        **$245,000**

PATRICK GUSMAN
SR. VICE PRESIDENT, INNOVATION
CHIEF COUNSELOR TO THE PRESIDENT
NATIONAL URBAN LEAGUE
120 WALL STREET, 8TH FLOOR
NEW YORK, NY 10005

T 212.███
F 212.███

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Marshall Mitchell, declare the following:

I am founder and principal of the named plaintiff in the above mentioned case. I have read the foregoing Verified Complaint and state under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 20th day of July, 2011.

_____
Marshall Mitchell

JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIFFERENT DRUMMER, LLC,

                Plaintiff,

v.

NATIONAL URBAN LEAGUE, INC.,

                Defendant.

Civil Action No. 11-CIV-4982

**RULE 7.1 STATEMENT**

RECEIVED
JUL 20 2011
U.S.D.C. S.D.N.Y.
CASHIERS

     Pursuant to Federal Rule of Civil Procedure 7.1 and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification for recusal, the undersigned counsel for Different Drummer, LLC, Plaintiff, certifies that there is no parent corporation of Different Drummer, LLC, Plaintiff, nor any publicly held corporation owning 10% or more of such party's stock.

Dated:

July 11, 2011

Respectfully submitted,

_____
Joseph A. Ruta, Esq.
SDNY Bar Code: JR0010